IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

NORMA M.,

        **Plaintiff,**

v.                                **Civil Action 3:23-cv-239**
                                  **Magistrate Judge Kimberly A. Jolson**

**COMMISSIONER OF**
**SOCIAL SECURITY,**

        **Defendant.**

## OPINION AND ORDER

Plaintiff, Norma M., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). For the reasons set forth below, the Court **OVERRULES** Plaintiff's Statement of Errors (Doc. 9) and **AFFIRMS** the Commissioner's decision.

**I.**      **BACKGROUND**

Plaintiff protectively filed her application for DIB on April 6, 2021, alleging disability beginning June 22, 2018, due to diabetes, high blood pressure, chronic pain, congestive heart failure, coronary artery disease (CAD), sleep apnea, chronic obstructive pulmonary disease ("COPD"), gastroparesis, depression, and anxiety. (R. at 208–09, 264). After her application was denied initially and on reconsideration, the Administrative Law Judge (the "ALJ") held a telephone hearing on July 5, 2022. (R. at 36–62). The ALJ denied benefits in a written decision on September 14, 2022. (R. at 14–35). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (R. at 1–6).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on August 23, 2023, (Doc. 1), and the Commissioner filed the administrative record on October 19, 2023. (Doc. 6). The matter has been briefed and is ripe for consideration. (Docs. 9, 11).

### A. Relevant Hearing Testimony

The ALJ summarized Plaintiff's testimony from her hearing:

> [Plaintiff] testified that she is not working and that her primary income is from her family. She confirmed driving, but only to doctor appointments, and that she experiences weakness and pain when driving. She reported having a lot of heart problems with pain in her heart and pain in the legs. She reported experiencing chest pain daily and that she lies down 10 hours a day to help with her pain. She stated her chest pain is her worst impairment and while at times it may be milder than others, it never goes away. She confirmed being on supplemental oxygen for the past couple of years and having a continuous positive airway pressures (CPAP) machine. She also reported experiencing palpitations that last six to seven minutes and occur four times a week but not every day. Despite the above issues, [Plaintiff] confirmed continuing to smoke a ½ pack of cigarettes daily, down from 2 ½ packs a day eight months ago. She denied drinking or using drugs. A typical day includes lying down and elevating her feet, eating, watching television, doing laundry once every two weeks, and socializing with family but mostly over the phone. [Plaintiff] added that she seldom cooks, has others shop with or for her, and cannot clean the bathroom unless it is with water because the chemicals affect her breathing.

(R. at 25).

### B. Relevant Medical Evidence

The ALJ discussed Plaintiff's medical records and symptoms regarding her physical impairments:

> Physically, medical records document extensive treatment for asthma, GERD, obstructive sleep apnea, coronary artery disease, and congestive heart failure. In May of 2021, [Plaintiff] was in no acute distress with clear lungs. Her last CT revealed resolution of pulmonary infiltrates. There were no pleural effusions, heart was normal size, and lungs were clear. The impression was that of a stable chest with no acute findings. [Plaintiff] also did not appear to be in decompensated heart failure (Exhibit B2F/5). Records in May 2021 remained the same. In November 2021, records noted that [Plaintiff] had recently been treated with steroids and anti- biotics for hard deep coughing spells. She was smoking 15 cigarettes a day. Chest x-rays revealed no acute abnormal findings. Overall, she appeared to be doing better and was not out of breath as much. She denied wheezing but was still having

significant daily coughing. She was using her nebulizer three to four times a day. Reflux symptoms were controlled on her current medication regimen. She was strongly advised to quit smoking (Exhibit B15F/5). [Plaintiff] returned in March 2022 and complained of shortness of breath and wheezing. She also reported leg swelling and leg pain with activity which resolved after resting. There had been no emergency room visits or treatment for pulmonary exacerbations and no outpatient treatment for pulmonary exacerbations since the last exam in November 2021. Lungs were clear with no rales, rhonchi, or wheezing. [Plaintiff] was to continue with her medications as prescribed (Exhibit B15F/2).

Cardiology records in February 2022 note no chest pain since about October 2021. [Plaintiff] did report right leg pain and swelling for over a month and reported that she was going to have tests to test her circulation. Review of records note complaints of leg pain dating back to October 2019 that waxed and waned. However, there was no mention of gait issues or an inability to walk. She was also treated pneumonia in March 2020 but improved (Exhibit B20F/1-14). Unfortunately, [Plaintiff] was admitted for five days in May 2022 and treated for acute congestive heart failure. She was initially treated with continuous oxygen and was noted to only have a history requiring nocturnal oxygen. She was also given IV Lasix and transitioned well to oral Lasix three days after admission. Ejection fraction was 40% and a stress test revealed a stable inferolateral wall scar and no ischemia. Cardiac catheterization on May 10, 2022 revealed a totally occluded stent in the proximal segment of the second obtuse marginal branch with good collateral filling of the distal segment and severe diffuse disease of the first small first obtuse marginal branch which is filled by collaterals. She was monitored overnight and labs on day of discharge (May 11, 2022) were stable with good renal function. She was instructed to follow-up with cardiology (Exhibits B21F; B24F/16-17).

[Plaintiff] was also admitted on June 22, 2022 for complaints of chest and epigastric pain. She was seen by cardiology and started on Imdur. Testing and blood work did not indicate a cardiac issue and she was discharged the next day (Exhibit B27F/4-5, 18).

[Plaintiff] seeks pain management from Dayton Outpatient Center for Pain Management. Her low back pain is considered stable on Percocet with no medication side effects. [Plaintiff] also reports 70% pain relief with her treatment with no impairment in driving, which appears inconsistent with her testimony of pain with driving (Exhibit B23F/14).

Records from Machuca Medical document treatment for type II diabetes with hyperglycemia. Poor control is noted with the need for insulin (Exhibit B25F/40). Record from Digestive Specialists also document treatment for Hepatitis B and compensated cirrhosis. She reported tolerating treatment well without any side effects. Latest routine liver imaging was negative for cancer (Exhibit B17F/2-3).

(R. at 25–26).

### C. Relevant Medical Opinions

The ALJ evaluated the opinion evidence as follows:

As for medical opinion(s) and prior administrative medical finding(s), [the ALJ] cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources. [The ALJ] ha[s] fully considered the medical opinions and prior administrative medical findings as follows: [the ALJ] ha[s] reviewed the DDS Physical Assessment of Dr. James Cacchillo at Exhibit B3A, who adopts the residual functional capacity of the previous ALJ decision at Exhibit B1A and cites to no new and material evidence under Drummond. This is not persuasive given the new and material evidence discussed herein which warrants a reduction to sedentary work. [The ALJ] ha[s] also reviewed the DDS Physical Assessment of Dr. Maureen Gallagher, which assesses additional environmental restrictions based on [Plaintiff]'s new diagnosis of asthma. This is persuasive in finding that [Plaintiff] should avoid concentrated exposure to fumes, odors, dust, gases, and poor ventilation. However, this is not persuasive in still finding [Plaintiff] capable of light exertional level work. [The ALJ] ha[s] also limited [Plaintiff] to occasional climbing of ramps and stairs instead of frequent, precluded all climbing of ladders, ropes, or scaffolds, and added additional environmental restrictions of no work at unprotected heights, with/around moving mechanical parts, or operating a motor vehicle as a job requirement and only occasional exposure to humidity, wetness, extreme cold, and extreme heat. The above limitations are based on [Plaintiff]'s asthma/COPD, recent episodes of heart failure, and legs issues that find support in the objective medical record (Exhibits B2F; B15F; B21F; B24F). However, [Plaintiff]'s latest hospital admission in May 2022 appears to be an exacerbation and does not reflect an on-going deterioration that would result in a total inability to perform work. There is also no support for [Plaintiff]'s allegations of needing oxygen all day and night, as there is only one mention of this need during admission in May [2022] with records specifically noting the need for only nocturnal oxygen prior (Exhibit B24F/16-17).

Mentally, [the ALJ] agree[s] with the DDS Mental Assessments of Kristen Haskin, Psy. D. at Exhibit B3A and David Dietz, Ph.D. at Exhibit B4A that find [Plaintiff] capable of understanding, remembering, and carrying out simple, routine tasks and simple, short cycle work that does not have strict time/production requirements. Both assessments also find that [Plaintiff] can have superficial interaction in the work setting, can adjust to minor changes in the work setting, and complete an ordinary work routine consistently on an independent basis. These are persuasive as they are based on the mental health records that are limited but reveal logical and goal directed thought processes, good judgment, above average intelligence, no hallucinations, normal cognition, good memory, good eye contact, normal psychomotor activity level, appropriate affect, normal thought content, no suicidal or homicidal ideations, cooperative and attentive behavior, normal orientation, no

4

> signs of hyperactivity or attention difficulties (Exhibit B26F) and the ability to understand and follow simple instructions (Exhibit B10F).
>
> The evaluation completed by Dr. Kurzhals is somewhat persuasive in its finding that [Plaintiff] can understand and follow simple instructions but not so in terms of finding [Plaintiff] highly anxious and easily overwhelmed with limited coping skills. [The ALJ] note[s] that [Plaintiff] does not seek mental health treatment for her anxiety and was also described as giving suboptimal effort and gave up quickly on some tasks (Exhibit B10F).

(R. at 27).

### D.      The ALJ's Decision

The ALJ found that Plaintiff meets the insured status requirements through December 31, 2022, and has not engaged in substantial gainful activity since June 22, 2018, her alleged onset date of disability. (R. at 20). The ALJ determined that Plaintiff suffered from the severe impairments of diabetes mellitus with peripheral neuropathy; GERD; gastritis; degenerative disc disease of the lumbar spine; varicose veins; peripheral vascular disease; arthritis; chronic obstructive pulmonary disease (COPD); congestive heart failure; chronic kidney disease; depressive disorder; anxiety disorder; and hypertensive vascular and renal disease. (*Id.*). But the ALJ found that none of Plaintiff's impairments, either singly or in combination, meets or medically equals a listed impairment. (R. at 21–24).

As to Plaintiff's residual functional capacity ("RFC"), the ALJ determined:

> [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds, and occasionally stoop, kneel, crouch, and crawl. She can never work at unprotected heights, with/around moving mechanical parts, or operate a motor vehicle as a part of a job requirement. She can have occasional exposure to humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, and extreme heart. Mentally, [Plaintiff] can perform simple, routine, and repetitive tasks but not at a production rate pace, perform simple work-related decisions, occasionally interact with supervisors, co-workers and the public, and tolerate few changes in a routine work setting.

(R. at 24).

5

Upon "careful consideration of the evidence," the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (R. at 28).

The ALJ relied on testimony from a Vocational Expert ("VE") to determine that Plaintiff is unable to perform her past relevant work as a housekeeping cleaner and as a tumbler operator. (R. at 28). Considering her age, education, work experience, and RFC, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff can perform, such as a charge account clerk, table worker, and a weight tester. (R. at 28–29). Consequently, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since June 22, 2018. (R. at 29).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Olive v. Comm'r of Soc. Sec.*, No. 3:06-cv-1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

6

### III. DISCUSSION

Plaintiff contends the ALJ erred when he failed to include limitations for Plaintiff's "need to elevate her legs throughout the day" and, consequently, off-task time allowances. (Doc. 9 at 3). In support of her argument, Plaintiff cites a single medical record, her own testimony, and questions posed to the vocational expert by the ALJ. (Doc. 9 at 3–4, citing R. at 47–49, 61, 1870). The Commissioner argues that substantial evidence supports the RFC, and the ALJ's decision should therefore be affirmed. (Doc. 11 at 4–10).

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from her impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). The Social Security regulations and Sixth Circuit precedent provide that the ALJ alone is charged with the final responsibility in determining a claimant's residual functional capacity. *See, e.g.*, 20 C.F.R. § 404.1527(d)(2) (the final responsibility for deciding the residual functional capacity "is reserved to the Commissioner"). And it is the ALJ who resolves conflicts in the medical evidence. *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). In doing so, the ALJ is charged with evaluating several factors when determining the RFC, including the medical evidence (not limited to medical opinion testimony) and the plaintiff's testimony. *Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010) (citing *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004)). Nevertheless, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09-cv-000411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010).

"Substantial evidence" for an RFC "may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately

7

portrays plaintiff's individual physical and mental impairments." *Lancaster v. Comm'r of Soc. Sec.*, 228 F. App'x 563, 573 (6th Cir. 2007) (internal quotations omitted). "But that rule applies *only* if the ALJ's question accurately portrays a claimant's physical and mental impairments. . . and the ALJ need not identify [Plaintiff's] precise limitations before posing hypothetical questions to the vocational expert." *Kessans v. Comm'r of Soc. Sec.*, 768 F. App'x 531, 536 (6th Cir. 2019). Additionally, an ALJ is not bound to include all the hypothetical limitations posed to the vocational expert in the final RFC. *Miller v. Comm'r of Soc. Sec.*, No. 3:20-cv-506, 2021 WL 4745430, at *3 (S.D. Ohio Oct. 12, 2021) (citing *Kessans*, 768 F. App'x at 536). In sum, if the medical record does not support adding such limitations, an ALJ does not err by not including all limitations posed to the vocational expert. *Beckham v. Comm'r of Soc. Sec.*, No. 1:19-cv-576, 2020 WL 5035451, at *9 (S.D. Ohio Aug. 26, 2020).

During the hearing, the ALJ posed several questions about the availability of jobs in the national economy for hypothetical individuals with limitations for elevating their legs and off-task time allowances. (*See* R. at 60–61). The vocational expert concluded that a need to raise the legs to above 16 inches would be work-preclusive for these hypothetical individuals. (*Id.*). The vocational expert also testified that employers would tolerate up to 10% off-task time daily and up to one day off work per month. (*Id.* at 61). In creating Plaintiff's RFC, the ALJ ultimately decided not to include any limitations based on Plaintiff's alleged need to elevate her legs or any off-task time allowances. (R. at 24). Plaintiff alleges that these exclusions constitute reversible error. (Doc. 9 at 3–4). But the Undersigned finds that substantial evidence supports the ALJ's decision, and Plaintiff's arguments fail for several reasons.

First, the objective medical evidence in the record does not establish that Plaintiff would need to elevate her legs during the day or that such a need would preclude her from working.

Plaintiff cites one medical record in support of this proposed limitation—a doctor's appointment from 2019. (Doc. 9 at 3, citing R. at 1870). This single record includes a note that Plaintiff was "encouraged to elevate legs daily, especially at night." (R. at 1870). But this record does not include a recommendation that Plaintiff elevate her legs during the day or how often she should do so. (*Id.*). And it does not state how high Plaintiff should elevate her legs. (*Id.*). Importantly, the vocational expert testified that "elevating the feet" would "preclude employment" only if Plaintiff was required to raise them "about 16 inches." (R. at 60–61). But the medical record cited by Plaintiff does not state any precise limitation based on her need to raise her legs or that she would need to raise her legs higher than 16 inches. (R. at 1870). As such, the Undersigned finds this record unpersuasive. *See Miller*, 2021 WL 4745430, at *4 (finding it "notable" that none of the medical records support the plaintiff's argument that a certain limitation should have been included in the RFC).

Similarly, Plaintiff has identified no medical records stating she would be off-task over 10% of the day or that she would be absent from work more than one day per month due to her medical impairments. (*See* Doc. 9 at 5); *see also Jacqueline J. v. Comm'r of Soc. Sec.*, No. 3:22-cv-293, 2024 WL 325301, at *5 (S.D. Ohio Jan. 29, 2024) (finding that the plaintiff's argument lacked merit because no objective medical evidence supported a limitation for off-task time or absenteeism); *Miller*, 2021 WL 4745430, at *4 (same); *Audrey M. v. Comm'r of Soc. Sec.*, No. 2:21-cv-945, 2022 WL 831321, at *4 (S.D. Ohio Mar. 21, 2022) (holding that substantial evidence supported an ALJ's decision to not adopt limitations for off-task time and absenteeism, because the medical records did not provide support for them). Therefore, the Undersigned cannot say the ALJ erred by not including such a limitation.

Second, none of the medical opinions in the record recommended these limitations. (*See* R. at 92–113; R. at 1913–19). The state agency physician, Maureen Gallagher, D.O., did not mention any need for Plaintiff to elevate her legs, nor did she state Plaintiff would be off-task more than 10% of the time or absent from work more than one day per month. (*See* R. at 92–113). While Plaintiff provided an additional opinion from clinical psychologist Robert J. Kurzhals, Ph.D., he also did not propose limitations for off-task time or multiple days off work per month. (R. at 1913–18). Accordingly, these opinions do not support the limitations Plaintiff argues should have been included in her RFC.

Third, although Plaintiff cites her own testimony in support of these additional limitations, she does not challenge the ALJ's evaluation of her credibility. And while Plaintiff testified about raising her legs to relieve her symptoms, Plaintiff did not testify about a need for off-task time or additional days off work. (*See* R. at 36–62). Regardless, the ALJ properly considered the record as a whole against her subjective reports of her symptoms. *Gibson v. Comm'r of Soc. Sec.*, No. 3:17-cv-210, 2018 WL 1149869, at *5 (S.D. Ohio Mar. 5, 2018) (acknowledging that an ALJ's opinion must be read as a whole).

In doing so, the ALJ found that although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms. . . [Plaintiff's] statements are not entirely consistent with the medical evidence and other evidence in the record[.]" (R. at 28). And this statement is supported by substantial evidence in the record. For example, concerning Plaintiff's leg issues, the ALJ noted that Plaintiff testified that her "typical day includes lying down and elevating her feet." (R. at 25; *see* R. at 47–48). But he also highlighted that while she "reported leg swelling and leg pain with activity," her symptoms "resolved" after resting. (R. at 25, citing R. at 1997). Contrary to Plaintiff's reports of constant pain and swelling, the ALJ further found

that the record showed her leg symptoms "wax and wane." (R. at 25; *see, e.g.*, R. at 1763 (stating Plaintiff complained of muscle pain but had no arthralgias/joint pain and no swelling in the extremities), 1769 (same), 1774 (noting intermittent swelling in her right foot), 1796 (stating she had a "good month overall"), 1866 (discussing that her leg pain and swelling "returned"), 1886 (discussing treatment options for Plaintiff's lower extremity pain), 1932 ("[S]he has leg swelling."), 1936 ("[S]he is doing well overall."), 1966 (stating that she sees an improvement in her pain from various treatments); 1997 (discussing leg pain and swelling that resolves after resting), 2089 (noting Plaintiff's history of varicose veins with pain and swelling); 2093 (describing Plaintiff's symptoms, her refusal to try certain treatments, and edema that comes and goes), 2102–03 (discussing leg pain and past treatments); 2274 (denying swelling of the extremities); 2475 (noting leg swelling)). In sum, the ALJ appropriately weighed her subjective reports against the objective medical evidence available in the record when he found her statements only partially credible.

Plaintiff also argues that due to her need to elevate her legs "in conjunction with the severe impairments she suffers from," she would "clearly be off-task throughout the workday." (Doc. 9 at 5 (citing no medical records or opinions in support)). But "the mere diagnosis of an impairment, of course, says nothing about the severity of the condition." *Arnold v. Comm'r of Soc. Sec.*, No. 3:20-cv-190, 2022 WL 92538, at *4 (S.D. Ohio Jan. 10, 2022) (quoting *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (citation omitted)). And the record, as discussed by the ALJ, does not support this assertion. The ALJ noted that while Plaintiff testified that she "lies down 10 hours a day to help with her pain," she had limited hospitalizations and responded well to her recommended treatments. (R. at 25–26, citing R. at 2037–39, 2162–63, 2167, 2281–82, 2372–74, 2561–63, 2575). He also noted that the record did not contain "mention of gait issues or an

11

inability to walk." (R. at 25; *see, e.g.*, R. at 1763 (stating Plaintiff was ambulating normally); 1838 (noting Plaintiff's normal gait and station); 1876 (same); 1966 (discussing that Plaintiff "ambulates without the need of any assistive devices"); 1972 (same); 2024 (same); 2317 (stating Plaintiff walks and does housework with breaks); 2325 (same); 2326 (noting normal gait and normal movement of all extremities)). Still more, the ALJ found that the medical records showed Plaintiff had "no signs of. . . attention difficulties." (R. at 26–27, citing R. at 2522–27).

Even so, the ALJ did not completely ignore Plaintiff's subjective reports when crafting her RFC. The ALJ properly accounted for Plaintiff's leg swelling and pain when he limited her to sedentary work, despite medical opinions in the record recommending a limitation to light work. (R. at 24; *see* R. at 101, 112). The ALJ further restricted Plaintiff to "simple, routine, and repetitive tasks" that cannot be done at a "production rate pace," seemingly accounting for the fact that Plaintiff cannot manage urgent, fast-paced work. (R. at 24). Ultimately, the ALJ found her statements about her symptoms not entirely credible or consistent with the objective medical evidence available. And because an ALJ "is only required to include in the residual functional capacity those limitations he finds credible," the Undersigned finds no error here. *Beckham*, 2020 WL 5035451, at *7; *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) ("[T]his court may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility." (internal quotations omitted)).

Therefore, the ALJ examined the totality of the record, properly considered Plaintiff's subjective reports of her symptoms, and crafted an RFC supported by substantial evidence. Accordingly, this Court affirms the ALJ's decision.

IV. **CONCLUSION**

Based on the foregoing, it is **ORDERED** that Plaintiff's Statement of Errors (Doc. 9) is **OVERRULED** and that judgment be entered in favor of Defendant.

IT IS SO ORDERED.


Date:   March 6, 2024                                         /s/ Kimberly A. Jolson
                                                              KIMBERLY A. JOLSON
                                                              UNITED STATES MAGISTRATE JUDGE